BARRETT v. GRAYS HARBOR COMMERCIAL CO.

(District Court W. D. Washington, S. D. December 3, 1913.)

No. 1,380.

MASTER AND SERVANT (§ 250¾ New, vol. 16 Key-No. Series)—WASHINGTON WORKMEN'S COMPENSATION ACT—CONSTRUCTION.

Washington Workmen's Compensation Act, Laws Wash. 1911, c. 74, § 4, requires employers to pay to the state, to create an accident fund, a percentage of wages paid, such payments to be made in advance, based on past pay rolls, and to be adjusted at the end of each year on the basis of the actual pay roll for that year. It further provides that any shortage on such an adjustment shall be made good before February 1st following, and, by section 8, that if any workman shall be injured while the employer is in default for any payment and after demand for the same, the employer shall not be entitled to the benefits of the act, but the workman shall have a right of action. The commission created is empowered to make regulations for the administration of the act. An employer was notified on February 28th of a shortage due on its adjustment, with a demand for payment within 30 days. A workman was injured during that time, and before the payment had been made, but it was afterward made during the time. Held, that the demand was presumably in accordance with the regulations of the commission, and did not become effective until the expiration of the 30 days, and that on payment within that time the employer was entitled to the benefit of the act, and the injured workman could not maintain an action in the courts.

At Law. Action by J. H. Barrett against the Grays Harbor Commercial Company. On demurrer to amended complaint. Demurrer sustained.

Hugo Metzler, of Tacoma, Wash., for plaintiff.

Bridges & Bruener, of Aberdeen, Wash., for defendant.

CUSHMAN, District Judge. This matter is for decision upon defendant's demurrer to the amended complaint. Plaintiff alleges that he was injured while in defendant's employ through the latter's negligence in failing to provide reasonably safe machinery in its sawmill where plaintiff was employed. Such employment is classified as "extrahazardous" by the Washington Workmen's Compensation Act. Section 2, c. 74, Sess. Laws 1911, p. 346. By this act such an employer is required to pay to the state 2½ per cent. of his total pay roll each year, to create an industrial insurance fund. To justify his right to recover, in spite of the Compensation Law, plaintiff alleges that the defendant has not paid to the State Industrial Insurance Commission the percentage of its pay roll due from it for the year 1913, so as to exempt it from this action under that law.

Under date of February 28, 1913, the chairman of the commission served the following notice of demand upon the defendant:

Demand is hereby made for the contribution on your pay roll as required by section 4 for the payment of $2,378.16 into the "accident fund" created by the Workmen's Compensation Act (chapter 74, Session Laws of 1911), and is based upon data and pay rolls on file in this office for the months of ——— ———. [See other side.]

Amount to be forwarded..................................... $2,378.16

This sum of $2,378.16 now demanded must be received at Olympia 30 days from the date above noted; otherwise you will be in default and subject to the penalties of the act.

Remittance may be made by check, draft, or money order, payable to Industrial Insurance Commission, and forwarded to Olympia, Washington.

This notice to you is a "demand for payment" as prescribed in section 8 of said law.

Indorsed on back:

| | | | |
|---|---|---|---|
| Class 10—Adjustment 1912: | | | |
| 8/12 of pay roll for 1912,............ $146,281 04—2½% | | | $3,657 03 |
| Credits: | | | |
| Adjustment for 1911................ | | $207 11 | |
| July 1st, by cash.................. | | 651 95 | |
| 9/25, by cash.................. | | 859 66 | 1,719 32 |
| | | | $1,937 71 |
| Class 29—Adjustment 1912: | | | |
| 5/12 of pay roll for 1912,............ $ 27,044 62—2½% | $676 12 | | |
| Less by cash August 16th, 1912...... | 235 67 | | 440 45 |
| Balance due................ | | | $2,378 16 |

On the 24th day of March, plaintiff was injured. Defendant did not make payment to the commission until March 28, 1913.

The Compensation Act provides:

"The application of this act as between employers and workmen shall date from and include the first day of October, 1911. The payment for 1911 shall be made prior to the day last named, and shall be preliminarily collected upon the pay roll of the last preceding three months of operation. At the end of each year an adjustment of accounts shall be made upon the basis of the

actual pay roll. Any shortage shall be made good on or before February 1st, following. Every employer who shall enter into business at any intermediate day shall make his payment for the initial year or portion thereof before commencing operation; its amount shall be calculated upon his estimated pay roll, an adjustment shall be made on or before February 1st of the following year in the manner above provided.

"For the purpose of such payments accounts shall be kept with each industry in accordance with the classification herein provided and no class shall be liable for the depletion of the accident fund from accidents happening in any other class. Each class shall meet and be liable for the accidents occurring in such class. There shall be collected from each class as an initial payment into the accident fund as above specified on or before the 1st day of October, 1911, one-fourth of the premium of the next succeeding year, and one-twelfth thereof at the close of each month after December, 1911: Provided, any class having sufficient funds credited to its account at the end of the first three months or any month thereafter, to meet the requirements of the accident fund, that class shall not be called upon for such month. In case of accidents occurring in such class after lapsed payment or payments said class shall pay the said lapsed or deferred payments commencing at the first lapsed payment, as may be necessary to meet such requirements of the accident fund.

"The fund thereby created shall be termed the 'accident fund' which shall be devoted exclusively to the purpose specified for it in this act.

"In that the intent is that the fund created under this section shall ultimately become neither more or less than self-supporting, exclusive of the expense of administration, the rates in this section named are subject to future adjustment by the legislature, and the classifications to rearrangement following any relative increase or decrease of hazard shown by experience.

"It shall be unlawful for the employer to deduct or obtain any part of the premium required by this section to be by him paid from the wages or earnings of his workmen or any of them, and the making or attempt to make any such deduction shall be a gross misdemeanor. If, after this act shall have come into operation, it is shown by experience under the act, because of poor or careless management, any establishment or work is unduly dangerous in comparison with other like establishments or works, the department may advance its classification of risks and premium rates in proportion to the undue hazard. In accordance with the same principle, any such increase in classification or premium rate, shall be subject to restoration to the schedule rate. Any such change in classification of risks or premium rates, or any change caused by change in the class of work, occurring during the year shall, at the time of the annual adjustment, be adjusted by the department in proportion to its duration in accordance with the schedule of this section. If, at the end of any year, it shall be seen that the contribution to the accident fund by any class of industry shall be less than the drain upon the fund on account of that class, the deficiency shall be made good to the fund on the 1st day of February of the following year by the employers of that class in proportion to their respective payments for the past year. (Sec. 4, pp. 351, 352, 353).

\* \* \* \* \* \* \* \* \* \*

"If any employer shall default in any payment to the accident fund hereinbefore in this act required, the sum due shall be collected by action at law in the name of the state as plaintiff, and such right of action shall be in addition to any other right of action or remedy. In respect to any injury happening to any of his workmen during the period of any default in the payment of any premium under section 4, the defaulting employer shall not, if such default be after demand for payment, be entitled to the benefits of this act, but shall be liable to suit by the injured workman. \* \* \* (Sec. 8, p. 362.)

\* \* \* \* \* \* \* \* \* \*

"Any employer, workman, beneficiary, or person feeling aggrieved at any decision of the department affecting his interests under this act may have the

209 F.—7

same reviewed by a proceeding for that purpose, in the nature of an appeal, initiated in the superior court of the county of his residence. * * * (Sec. 20, p. 368).

* * * * * * * * * *

"The commission shall, in accordance with the provisions of this act:

"1. Establish and promulgate rules governing the administration of this act.

"2. Ascertain and establish the amounts to be paid into and out of the accident fund.

* * * * * * * * * *

"7. Compile and preserve statistics showing the number of accidents occurring in the establishment or works of each employer, the liabilities and expenditures of the accident fund on account of, and the premium collected from the same, and hospital charges and expenses." (Sec. 24, pp. 370, 371).

It is clear from the foregoing that the provisions of section 4 concern matters of administration, primarily, between the commission and the employer. Section 4, in part, provides:

"At the end of each year an adjustment of accounts shall be made upon the basis of the actual pay roll. Any shortage shall be made good on or before February 1st, following."

The effect of this provision is that, if adjustment is made prior to February 1st and the employer fails to pay, the state may sue to recover. So far as an employé who is injured is concerned, a separate provision is made, in section 8:

"In respect to any injury happening to any of his workmen during the period of any default in the payment of any premium under section 4, the defaulting employer shall not, if such default be after demand for payment, be entitled to the benefits of this act, but shall be liable to suit by the injured workman. * * *"

The notice set out above, served upon the defendant, though dated February 28th, was not, in effect, a demand before the end of the 30 days allowed by its terms. Section 4 provides that "at the end of each year an adjustment shall be made." This necessarily contemplates the allowance of a reasonable time after the end of the year for the examination of the pay rolls and proofs, in order to make the adjustment. So far as the complaint discloses, no adjustment was made before the date of the notice of demand; i. e., February 28th. It would not appear, therefore, that an unreasonable length of time had elapsed since the end of 1912 for the purpose of making an adjustment.

The power given to make demand necessarily contemplates the power, in the absence of statutory prohibition, to allow a reasonable time after notice of demand for compliance. The 30 days allowed by the notice in this case would not appear unreasonably long. The act itself expressly reposes a considerable discretion in the commission in such matters of administration, and expressly empowers the commission to make rules governing the administration of the act. In the absence of the promulgation of formal rules, the practice of the commission would have the same effect. No departure from the regular practice on the part of the commission is disclosed in this case.

Demurrer sustained.